Salvatore C. Moretti, Appellant, v. Civil Service Board of the Chicago Park District et al., Appellees.

Gen. No. 46,157.

Opinion filed March 24, 1954. Rehearing denied April 21, 1954. Released for publication April 22, 1954.

SIDNEY Z. TEPPER, of Chicago, for appellant.

PHILIP A. LOZOWICK, General Attorney, Chicago Park District, of Chicago, for appellees; MARTIN G. LOEFF, Assistant General Attorney, Chicago Park District, of Chicago, of counsel.

MR. PRESIDING JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff appeals from the judgment of the circuit court of Cook county affirming a decision of the Civil Service Board of the Chicago Park District, discharging him from his position as a police officer of said District. The hearing before the circuit court was under the Administrative Review Act, chap. 110, pars. 264–279, Ill. Rev. Statutes 1953 [Jones Ill. Stats. Ann. 104.094(1)–104.094(16)].

Plaintiff was tried before the Civil Service Board upon the following written charges:

"1. Commission of acts of moral turpitude and gross impropriety damaging to the reputation of the service, in violation of Rule 7, Division 2, Section 12 of the Rules of the Civil Service Board of the Chicago Park District.

"2. Conduct failing to conform to the standards of the service and failing to contribute to the efficiency and dignity of the service, in violation of Rule 7, Division 2, Section 36 of the Rules of the Civil Service Board of the Chicago Park District.

"3. Failure and refusal on the part of said Salvatore C. Moretti, as a police officer sworn to uphold the law and to protect the public interest, to execute an immunity waiver, to testify before a regularly impanelled Grand Jury of the County of Cook, State of Illinois, when called upon to do so, and to cooperate with said Grand Jury."

Specifications as to each of said charges were filed with the written charges.

Upon a full hearing, the Civil Service Board made specific findings of fact as to the charges enumerated. It found plaintiff guilty of said charges, directed the discharge of plaintiff from his position as patrolman and his name removed from the civil service list of said Park District.

There is no point raised upon this appeal as to the regularity of the proceedings before the Civil Service Board.

We shall first concern ourselves with the following undisputed facts appearing in the record: Plaintiff was a patrolman in the classified service in the Chicago

Park District at the time of the grievances complained of. On October 16, 1951, the regularly impaneled grand jury of Cook county was in session and conducting an inquisition into the alleged violation of certain criminal laws of the State. Harold A. Smith, upon the petition of the then regularly elected State's Attorney of Cook county, was appointed by the criminal court of Cook county as special State's Attorney for the People of the State of Illinois, to conduct certain investigations detailed in the order of the court appointing him. He in turn appointed Richard B. Austin as his assistant. Richard B. Austin has since been elected and is now one of the Judges of the superior court of Cook county.

On October 16, 1951, Harold A. Smith and Richard B. Austin were in the grand jury room informing the grand jury that an accusation had been made by several witnesses regarding an attempt by plaintiff and other members of the Moretti family to intimidate and bribe a witness in connection with charges of murder being then heard by said grand jury. By direction of the foreman of the grand jury, Austin sent a communication to plaintiff, who was then on duty as a traffic officer, to appear at the Criminal Court Building to see him. Within an hour and a half, plaintiff, without subpoena, appeared at the Criminal Court Building, and his identity was made known to Austin. Austin directed one of the officers to take charge of him until he communicated with him later. Upon Austin's direction, shortly thereafter, plaintiff was escorted into the grand jury room between 10:30 a. m. and noon of that day. He was sworn as a witness, was asked his name and address, and Austin then read an immunity waiver to plaintiff, dated October 16, 1951, which is as follows:

"I, Salvatore Moretti, have been advised of my legal rights. I know I cannot be compelled or forced to give testimony against myself before the grand jury or any court.

"I now know I do not have to make any statement nor give any answer to any question that may tend to incriminate me.

"I now know that whatever I say here can be used against me in any criminal proceeding involving the subject matter of my testimony.

"No one has forced me by threats or otherwise or promised me anything either directly or indirectly to appear and testify before the grand jury. Of my own free will and with full knowledge of my rights in this matter I am willing to testify before the grand jury, and I hereby waive all claim of immunity that I may have by reason of my appearing and giving testimony before the grand jury concerning matters of which I have knowledge."

Austin then asked plaintiff if he understood it, and the answer was "Yes." He was then asked to sign it, and he said that he refused to sign it. He was asked if he knew what he was doing by not signing, and he answered, "I refuse to sign anything, but I will not refuse to answer any questions the ladies and gentlemen of this grand jury want me to answer, which you want answered." Upon his refusal to sign the immunity waiver, he was excused, and he left the grand jury room.

After plaintiff left the Criminal Court Building he received a communication that his superior, Captain Annen, wanted to see him. He went to see the captain,

who then advised plaintiff that he stood suspended from the police force.

The disputed testimony centers around what occurred when plaintiff arrived at the Criminal Court Building to see Austin. Plaintiff testified that he was not allowed to communicate with anyone after he was taken to Austin's office; that he was pushed and shoved into the grand jury room; that he did not know what an immunity waiver was; that he thought he was asked to sign some confession; and that he was confused at the time he was sworn as a witness in the grand jury room and did not understand the nature of the proceedings and what his rights were.

Plaintiff testified that one of his reasons for refusing to sign the immunity waiver was that he questioned Mr. Austin's right to participate before the grand jury. He testified: "I had reasonable grounds to believe that he had no authority. I had received no subpoena whatever. I had committed no crime in Cook County. . . . I consulted a lawyer months before October 16, 1951, when Mr. Tepper, Mr. Romano and Mr. Block were discussing my brother Michael's case, on the ground he was not a duly sworn state's attorney, he is not elected, he is not attorney-general, and so forth, that he has no right, and so forth. I thought Mr. Austin was not qualified to be a lawyer. I answered what I thought of the legal status of Mr. Austin."

 Upon this record, it becomes our duty under the Administrative Review Act, as stated by the Supreme Court in *Harrison v. Civil Service Commission,* 1 Ill.2d 137, 147, "to examine the record and determine whether the findings of the commission are supported by any evidence."

Plaintiff contends (1) that the Civil Service Board had no legal right to discharge plaintiff because of

94

plaintiff's refusal to sign the immunity waiver referred to; (2) that he had not been subpoenaed to appear before the grand jury and had not been directed by his superior officer to sign an immunity waiver, and therefore he had not violated any order or direction of his commanding officer to justify his discharge; and (3) that Richard B. Austin was in the grand jury room without legal authority and without legal right to question plaintiff before the grand jury, and that therefore what transpired in the grand jury room could not be used as a basis for the charges filed with the Civil Service Board or the hearing had upon those charges.

The first contention has been disposed of adversely to plaintiff in *Drury v. Hurley*, 339 Ill. App. 33 (certiorari denied 339 U. S. 983, 94 L. Ed. 1386, 70 S. Ct. 1027; rehearing dismissed 340 U. S. 804, 95 L. Ed. 590, 71 S. Ct. 15), involving a factual situation almost identical with the instant case. Drury and Connelly were police officers of Chicago and had been summoned before the grand jury to testify concerning a matter then being investigated by said grand jury. They, too, refused to sign an immunity waiver but were willing to testify before said grand jury, and were thereupon excused from the grand jury room without questioning. The Commissioner of Police promptly suspended said officers, and subsequently charges were preferred before the Civil Service Board of Chicago. Upon a hearing the Board directed the discharge of said officers, finding that the refusal to sign the immunity waiver was in effect a refusal to testify unless immunity be granted them, and was therefore conduct unbecoming a police officer and cause for dismissal. This court there stated (p. 42):

"The basic question is not the right of the police officers to exercise a constitutional privilege, but whether

their refusal to sign an immunity waiver was a breach of their public trust which impaired the efficiency standards and morale of the police department of the City of Chicago and therefore constituted conduct unbecoming a police officer and was 'cause' for removal."

After reviewing many decisions in the various jurisdictions upon that question, this court further said (p. 48):

"All the decisions heretofore cited are consonant with the principle that a police officer, by reason of his special status, duties and responsibility, may not invoke his constitutional privilege against self-incrimination in matters touching upon his occupation without being guilty of a breach of duty on his part by reason of such refusal. . . .

"As pointed out by the commission, one compelled to testify against himself is immune from criminal prosecution as to the subject matter to which his testimony relates. Accordingly, a refusal to sign an immunity waiver amounts to a refusal in advance to relinquish the benefits of the constitutional privilege that a person is not to be compelled to give evidence against himself in a criminal case; and when a person called as a witness refuses either to testify or to sign an immunity waiver in advance of testimony, he relies in either instance upon the same constitutional privilege against self-incrimination. One who refuses to testify before a grand jury in this State seeks the protection of the Illinois constitution by withholding testimony which might incriminate him; and one who refuses to sign an immunity waiver in advance of testimony before such a jury seeks the protection of that provision by declining in advance to give up the immunity to crim-

inal prosecution which will follow by virtue of that provision if he is compelled to testify against himself."

This court further said (p. 50), citing *Boone v. People*, 148 Ill. 440:

"The case indicates that Illinois courts would quash all resulting indictments if the person proceeded against answered questions before a grand jury, and seems to justify the practice of the Cook county state's attorney's office of not taking a party proceeded against before the grand jury unless he first signs an immunity waiver. (Journal of Criminal Law and Criminology of Northwestern University, vol. 38, no. 6, March-April, 1948, p. 619, comments by Dale E. Sherrow.) Inasmuch as the petitioners refused to waive immunity in writing, it would have been a proceeding of doubtful validity, to say the least, to take them before the grand jury for examination.

"In the light of what has been said we think the distinction between refusing to testify and the refusal to sign an immunity waiver before testifying before the grand jury is more imaginary than real, and as pointed out in the excellent analysis of the subject above referred to, 'Refusal to sign an immunity waiver can mean only one thing—the person refusing to sign is unwilling to expose all he knows about certain alleged criminal activities because the exposure will tend to incriminate him. That is the only ground upon which this constitutional privilege can be invoked. Refusal to sign the waiver would seem to be just as much a breach of duty as an actual refusal to testify.'"

██ We adhere to the holding in the *Drury* case.
██ As to the second contention, the opinion in the *Drury* case does not indicate that Drury and Connelly were directed by their commanding officer to sign immunity waivers. The absence of a direction by the

97

commanding officer to plaintiff to sign an immunity waiver has no material bearing upon the decision reached by the Civil Service Board.

As to the third contention, the validity of Smith's appointment as special State's Attorney and the latter's appointment of Austin as his assistant were directly attacked in *People v. Moretti,* 415 Ill. 398. The court there said (p. 403):

"Smith was a special prosecuting attorney appointed by the court to prosecute a certain cause with all his authority conferred upon him by the court. That he would require legal assistance to investigate and prosecute these crimes before the Cook County grand jury is foreseeable. He appointed Austin as his assistant, Austin was sworn in as a special assistant prosecutor, and he participated in the prosecution before the grand jury in the presence of, and under the supervision of, the court-appointed special prosecutor. Defendants have not shown that Austin was present in the grand jury room while that body was deliberating or voting, that he influenced the jurors in any manner or that he did anything other than interrogate the witnesses in the presence and under the supervision of Smith. We have, under like circumstances, found that this does not invalidate the proceedings where no prejudice is shown. (*People v. Hartenbower,* 283 Ill. 591.) Defendants do not point out in what manner they were prejudiced by Austin's interrogation of the witnesses instead of Smith and we are unable to conjure any."

We are not impressed by plaintiff's effort to avoid the effect of his refusal to sign an immunity waiver by claiming that he was confused when the immunity waiver was read to him; that he was roughly treated and pushed into the grand jury room; and that he was then a young police officer, 26 years of age and

98

inexperienced in such matters. It does appear from his testimony already quoted that he had had the benefit of advice from his present counsel weeks before his appearance before the grand jury, and had discussed with him the propriety and legal right of Austin to appear before the grand jury in connection with the investigation then being conducted by the grand jury involving three of plaintiff's brothers. *People v. Moretti, supra.* Furthermore, it appears plaintiff had ample time between his release from appearance before the grand jury and his interview with his commanding officer, who notified him of his suspension, to obtain whatever legal advice was necessary and to offer to sign the immunity waiver and testify before the grand jury. He did not avail himself of the opportunity, and we must assume that he was willing to rely upon the reasons urged before the Civil Service Board for his refusal.

██ Finally, plaintiff contends that the decision of the Civil Service Board is against the manifest weight of the evidence and is not supported by substantial evidence. We have already discussed our prescribed duty upon this review (*Harrison v. Civil Service Commission, supra*). Even if plaintiff were correct in assuming that we have the power to determine whether the finding is against the manifest weight of the evidence or whether there is substantial evidence in the record to support the finding, we would nevertheless be compelled to say that there is substantial evidence in the record to support the finding and that the same is not against the manifest weight of the evidence.

The judgment of the circuit court is affirmed.

*Affirmed.*

KILEY and LEWE, JJ., concur.